UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CASE NO. 4:10-CV-00074-R

**WILLIAM H. YOUNG**                                                                                          **PLAINTIFF**

v.

**UNITED STATES DEPARTMENT
OF AGRICULTURE, et al.,**                                                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' motion to dismiss (DN 68). The Plaintiff has responded (DN 70) and Defendants have replied (DN 75). Defendants have also filed a certification to substitute the United States as a party under the Federal Tort Claims Act (DN 67). The Plaintiff has responded in opposition (DN 76). These matters are now ripe for adjudication.

## BACKGROUND

Harry T. Young originally filed this action, *pro se*, against a litany of federal agencies and employees protesting the 2005 foreclosure of his farm. He eventually retained counsel and filed an Amended Complaint, simplifying the parties and his alleged theories of recovery. Young brought suit against the United States Department of Agriculture ("USDA") and a number of its employees, including Tom Vilsack, Pearlie Reed, Lloyd Wright, Carl Ruiz-Martin, Joseph Wathen, and Joe Leonard. He also filed against the United States Department of Justice ("DOJ"), the U.S. Attorney General, Eric Holder, and Michael Spalding, an Assistant United States Attorney in Louisville, Kentucky (collectively "DOJ Defendants").

Young was an African-American farmer that, until July of 2005, owned some 289 acres of farmland near Utica, Kentucky ("farm"). He secured loans from the Farm Service Agency

("FSA"), which is under the regulatory umbrella of the USDA.  On July 5, 2005, Young said the USDA and FSA foreclosed on the farm without any advanced notice and forcibly removed him from the property.  He further declared that after his eviction, the USDA and FSA twice rejected his offers to pay off the balance of the loan.

On the basis of this narrative, Young filed the instant action on May 24, 2010.[1]  He advanced that this foreclosure and eviction violated a number of his statutory and constitutional rights.  Specifically, he claimed violations of the Equal Credit Opportunity Act ("ECOA"), the Administrative Procedure Act ("APA"), and his rights under the Fifth Amendment.  He also said several Defendants conspired to interfere with his civil rights, in violation of 42 U.S.C. § 1985.  Finally, Young alleged fraud and negligent retention claims against the DOJ Defendants.

Defendants previously moved to dismiss this case under the doctrine of *res judicata*.  The Court denied their motion, but permitted an additional motion to dismiss under other legal theories.  *See* Memo. Op. & Ord., DN 54 at 6-7.  Defendants have again moved to dismiss Plaintiff's amended complaint, arguing many of these claims are either barred by the statute of limitations or insufficiently pled to continue.

**STANDARD**

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff."  *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

---

[1] During the pendency of this matter, Harry T. Young died.  His son, William T. Young, has been substituted as the plaintiff (herein "Plaintiff").  DN 61.

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

## DISCUSSION

### I. ECOA Claims

Plaintiff alleges that forcing Young from the farm without notice of foreclosure and refusing his payment to reconcile the debt violated the ECOA. Defendants respond that Plaintiff's claim under the ECOA is both untimely and legally flawed.

"Claims under the ECOA and its implementing regulations are subject to a two-year statute of limitations." *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 879 (6th Cir. 2002) (citing 15 U.S.C. § 1691e(f)). When pinpointing the triggering date, courts focus on "the discriminatory conduct giving rise to a statutory or regulatory claim." *Id.* (citations omitted). Under federal law, civil actions typically accrue "when the plaintiff knows or has reason to know

of the injury which is the basis of his action.  A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)); *see Commc'ns Vending Corp. of Ariz., Inc. v. FCC*, 365 F.3d 1064, 1074 (D.C. Cir. 2004).  Here, Young says the declination of his payments were the final actions that would have spawned a violation of the ECOA.  These offers of payments were made sometime during the year after the seizure of Young's farm.  *See* Am. Compl. ¶ 28.  Assigning the latest possible date to these offers, they could have been rejected by the Government's officials no later than July of 2006.  Since Young understood the alleged statutory violations had occurred, he was required to bring his claim under ECOA by July of 2008.  He failed in this endeavor.

Plaintiff proposes the statute of limitations should be tolled in these circumstances because Young was the victim of systematic discrimination by the Defendants.  In support, Plaintiff cites cases exploring the continuing violation doctrine.[2]  Courts have used it to toll the applicable statute of limitations under the ECOA where the continuing violations of a litigant's rights obviate the staleness concerns that are the policy for limitation periods.  *See Ramirez v. GreenPoint Mortg. Funding, Inc.*, 633 F. Supp. 2d 922, 929-30 (N.D. Cal. 2008); *Davis v. Gen. Motors Acceptance Corp.*, 406 F. Supp. 2d 698, 705-06 (N.D. Miss. 2005).  However, courts opt to toll claims under this doctrine principally where discrimination "could only manifest itself after a critical mass of similarly situated people experienced it, so as to bring an over-arching

---

[2] Courts have also examined whether the limitations period for claims under the ECOA may be extended due to fraudulent concealment.  *See Williams v. Conner*, 522 F. Supp. 2d 92, 99-100 (D.D.C. 2007); *Wise v. Mortg. Lenders Network USA, Inc.*, 420 F. Supp. 2d 389 (E.D. Pa. 2006).  Since Plaintiff does not allege Defendants concealed material facts about their alleged violations, the Court does not analyze this basis for extending the limitations period.

pattern to light." *Davis*, 406 F. Supp. 2d at 705-06.

The continuing violation doctrine is inapposite to the present matter because Plaintiff has not described a continuing violation of his rights under the ECOA. Rather, he describes three discrete events: the seizure of his farm in July of 2005 and the two refusals of payment sometime in 2006. Accordingly, he may not bootstrap his claim under the ECOA to the continuing violation doctrine. Although Plaintiff argues that equity should compel this Court to ignore the above-stated analysis, he fails to provide supportive precedent or a legitimate reason counseling such a path. Plaintiff's claim under the ECOA is time-barred and hereby DISMISSED. Since this claim is untimely, the Court does not discuss the other bases for dismissal.

### II. Claims under 42 U.S.C. § 1985 and 7 C.F.R. § 15.1

Plaintiff avers that Defendants Joseph Wathen, Jr., Michael Spalding, and the USDA/FSA conspired together to deprive Young of his rights under the loan guarantee program, to illegally foreclose on his property, and to deny his payments in satisfaction of his loan. Defendants move to dismiss, arguing these claims are untimely and improperly alleged.

Under Kentucky and federal law, litigants bringing section 1985 claims must act within one year. *See Bowden v. City of Franklin*, 13 F. App'x 266, 272 (6th Cir. 2001); *Parrish v. Univ. of Louisville*, No. 3:10-CV-00136-S, 2010 WL 4536773, at *2 (W.D. Ky. Nov. 2, 2010). Civil actions under this statutory provision accrue under the discovery test, requiring would-be plaintiffs to act when they have reason to know of the injury. *See Roberson*, 399 F.3d at 794; *Parrish*, 2010 WL 4536773, at *2.

Again, the latest dates in the facts for this charge of conspiracy are the Defendants' rejection of the payments by Young sometime in 2006. Assuming Young should have acted by

the end of 2007, the instant matter has been filed three years too late. Furthermore, Plaintiff may not rely on the continuing violation doctrine, fraudulent concealment, or notions of equity to extend the applicable limitations period for the reasons addressed above. Accordingly, Plaintiff's claims under section 1985 are time barred and hereby DISMISSED. The Court does not discuss the other bases for dismissal.

### III. APA Claim

Plaintiff says Defendants USDA, Joe Leondard, Pearlie Reed, Carl Ruiz-Martin, and Lloyd Wright knew or should have known that the foreclosure of Young's farm was discriminatory. He urges that their actions constitute an arbitrary and capricious act, and thereby violate the APA. Defendants respond that this claim is legally flawed because the APA only applies when a government agency makes a decision on the record and may only be invoked when there is no other statutory remedy.

The APA applies to "every case of adjudications required by statute to be determined on the record after opportunity for an agency hearing . . . ." 5 U.S.C. § 554(a). In *Lathan v. Block*, 627 F. Supp. 397 (D.N.D. 1986), in reviewing whether a foreclosure by the FSA could be challenged under the APA, Judge Van Sickle wrote that foreclosures pursuant to FSA administrative action were not required to be made on the record. *Id*. at 403-04. Since foreclosures, accelerations, and deferral determinations for loans under the FSA were not on the administrative record, the judge concluded challenges to these agency actions could not be pursued under the APA. *Id*. The Court finds this reasoning persuasive, and relies upon it to dismiss this potion of Young's complaint.

Even assuming review of foreclosures by the FSA was permitted, litigants with an

alternative remedy against a federal agency for discrimination may not pursue an analogous claim under the APA. *See* 5 U.S.C. § 704 (APA makes final agency action reviewable only where "there is no other adequate remedy in a court are subject to judicial review"). Courts have adopted this approach in part because "if other remedies are adequate, federal courts will not oversee the overseer." *Williams*, 522 F. Supp. 2d at 103 (quoting *Coker v. Sullivan*, 902 F.2d 84, 89 (D.C. Cir. 1990). Moreover, even if the party's alternative remedy is no longer available, any action under the APA is still barred against a federal agency for discrimination if another adequate remedy existed. *See id*. at 102-04 (where ECOA claim was barred by statute of limitations, claims under APA were still inappropriate because the plaintiff's claims against the federal agency for discrimination in credit transactions were squarely within the ECOA).

All of these reasons demonstrate Plaintiff's claim under the APA is fatally defective. Accordingly, this theory of recovery is DISMISSED.

### IV. Fifth Amendment Claim

Plaintiff contends Defendants Joseph Wathen, Jr. and Michael Spalding violated Young's Fifth Amendment rights when they seized his property without providing just compensation. Am. Compl. ¶ 37, DN 42 at 8. Plaintiff also alleges Wathen and Spalding failed to provided Young with either procedural or substantive due process of law before removing him from his property. Defendants seek to dismiss this theory because an action under the Fifth Amendment is only a restraint on the federal government and therefore may not be maintained against Wathen and Spalding in their individual capacities. Defendants further argue this takings claim in untenable since Plaintiff seeks monetary damages and the federal government is entitled to sovereign immunity under such circumstances.

Before addressing Defendants objections, the Court will attempt to unravel the Fifth Amendment claims implicated by this section.  There appear to be three.  The first is an average takings claim, alleging the federal government took Young's land without just compensation. *See Hensley v. City of Columbus*, 557 F.3d 693, 695-96 (6th Cir. 2009).  The second is a procedural due process claim for not providing timely notice of Young's default, while the third is a substantive due process claim.

Regarding this final theory of recovery, "the Supreme Court has repeatedly cautioned that the concept of substantive due process has no place when a provision of the Constitution directly addresses the type of illegal governmental conduct alleged by the plaintiff." *Montgomery v. Carter Cnty., Tenn.*, 226 F.3d 758, 769 (6th Cir. 2000).  Such precedent has led this and other circuits to conclude that where a litigant brings a takings-clause claim under the Fifth Amendment, "no room is left for the concept of substantive due process."  *Id.*; *see Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 949 (9th Cir. 2004) ("[S]ubstantive due process claims based on governmental interference with property rights are foreclosed by the Fifth Amendment's Takings Clause."); *Stebelton v. Bloom Tp. Bd. of Zoning Appeals*, No. 2:09-CV-808, 2010 WL 1629868, at *3 (S.D. Ohio Apr. 21, 2010) ("The Sixth Circuit has recognized the Supreme Court's reluctance to endorse substantive due process claims in the face of more specific constitutional provisions addressing the allegedly unconstitutional action." (citations omitted)).  Since a substantive due process claim is not cognizable under these circumstances, it is DISMISSED.

Defendants move for dismissal on two bases.  First, they assert Plaintiff's complaint improperly alleges claims against Wathen and Spalding in their individual capacity.  Plaintiffs

are generally required to spell out in what capacity they are suing defendants.  When they fail to do so, "by operation of law, defendants are deemed sued in their official capacities."  *Soper ex rel. Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999), *cert. denied*, 530 U.S. 1262 (2000) (citations omitted).  Here, Plaintiff asks the Court to construe the claims against Wathen and Spalding as official capacity claims because they were performing their official duties.  Plaintiff does not designate whether the claims against Wathen are official or individual capacity claims; thus, they are interpreted to be official capacity and properly stated.  Regarding Spalding, Plaintiff asserts unambiguously he is being sued in his "individual capacity."  Am. Compl. ¶ 6, DN 42 at 3.  Accordingly, the takings claim against Spalding is untenable and hereby DISMISSED.  *See Canadian Trans. Co. v. United States*, 663 F.2d 1081, 1093 (D.C. Cir. 1980) ("[P]rivate citizens, acting in their private capacities, cannot be guilty of violating the due process rights.  The Fifth Amendment is a restraint on the federal government, not on private citizens.").

      The official capacity claim against Wathen is flawed if it seeks monetary damages.  *See Nuclear Trans. & Storage, Inc. v. U.S. Through Dept. of Energy*, 703 F. Supp. 660, 664-65 (E.D. Tenn. 1988) (official capacity claims against federal officers were barred by sovereign immunity in takings claim under Fifth Amendment).  In the judgment section of the complaint, Plaintiff asks for compensatory damages, punitive damages, reasonable and necessary attorneys' fees and expenses, and the costs of suit.  Am. Compl. ¶ 53, DN 42 at 10.  Plaintiff further prays the Court grant "any and all such other and further relief, at law or equity, to which Plaintiff may be justly entitled."  *Id*. at 10-11.  According to Plaintiff, contained within this last passage is the implicit request for equitable relief, specifically the return of Young's property.

The Court is unaware of any supporting legal precedent to this effect. Although a complaint should be construed liberally by the court at this dismissal stage, the language of Plaintiff's requests for relief is clear: he seeks monetary damages for the alleged harm to Young. Since the claims under the Fifth Amendment request monetary compensation from Wathen in his official capacity, they are barred by the doctrine of sovereign immunity.[3] *Nuclear Trans.*, 703 F. Supp. at 664-65; *Heritage Hills Fellowship v. Plouff*, 555 F. Supp. 1290, 1294 (E.D. Mich. 1983). Accordingly, the final Fifth Amendment claim should be DISMISSED.

**V. Tort Claims**

Plaintiff avers the USDA, Spalding, and Wathen perpetrated a fraud on Young by foreclosing on his farm even after he had paid off the balance of his loan. Plaintiff further maintains the DOJ is liable for the negligent retention of Spalding in the face of his repeated discrimination against black farmers. Lastly, Plaintiff asserts the tort of malicious and false prosecution against Spalding for brining legal action against Young in the past.

    1. Certification

Suits in tort against federal employees under state law necessarily implicate the Federal Tort Claims Act ("FTCA"). "When federal employees are sued for damages for harms caused in the course of their employment, the [FTCA] generally authorizes substitution of the United States as the defendant." *Hui v. Castaneda*, 130 S.Ct. 1845, 1848 (2010) (internal citations

---

[3] The Court is unaware of any precedent that would permit Plaintiff to something other than monetary compensation. His contention that he is entitle to recover Young's farm under the Fifth Amendment runs counter to the relief typically requested, just compensation. 26 Am. Jur. 2d *Eminent Domain* § 112. Assuming that this is the portion of the Fifth Amendment Plaintiff seeks to use, he has also ignored the requirement that the government taking be for at "public purpose." *Id*.

omitted). "Thus, the FTCA gives federal employees absolute tort immunity for acts committed within the course and scope of their employment, whether the acts are discretionary or operational, thereby immunizing government employees from suit even when an exception in the FTCA precludes recovery against the government." 35A Am. Jur. 2d *Federal Tort Claims Act* § 6. The Westfall Act further provides the Attorney General the authority to certify whether federal employees were acting "within the scope of his or her office or employment at the time of the incident out of which the claim arose." 35A Am. Jur. 2d *Federal Tort Claims Act* § 147. "Whether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996).

A proper certification concerning the scope of the federal employee "is prima facie evidence that the employee was acting within the scope of employment." *Singleton v. United States*, 277 F.3d 864, 870-71 (6th Cir. 2002) (quoting *RMI*, 78 F.3d at 1143). A litigant hoping to undermine or stop the substitution of the United States must offer proof demonstrating the federal employee was not acting in the scope of employment. *Id*. The burden then shifts back upon the government to provide proof supporting the certification. *Id*. Although a hearing may be necessary to review the evidentiary basis for a certification, it is unwarranted "where even if the plaintiff's assertions were true, the complaint allegations establish that the employee was acting within the scope of his/her employment." *RMI*, 78 F.3d at 1143.

David Hale, the United States Attorney for the Western District of Kentucky, has certified at the time of the alleged conduct both Wathen and Spalding were within the scope of

their employment.[4]  Plaintiff's amended complaint says Spalding and Wathen "intentionally deceived [Young] to cause him harm and discriminate against him to deprive him of rights enjoyed by white farmers."  Am. Compl. ¶ 46, DN 42 at 9.  Kentucky has adopted the Restatement (Third) of Agency for describing when an employee acts outside the scope of his or her employment.  It says that an "employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer."  *Papa John's Intern., Inc. v. McCoy*, 244 S.W.3d 44, 51 (Ky. 2008) (quoting Restatement (Third) of Agency § 7.07 (2006)).  Accepting Plaintiff's allegations as true, Spalding's and Wathen's alleged fraud and malicious prosecution against Young would necessarily fall outside the scope of their employment.  These actions would not have served the function of their positions nor furthered the goals of their employers.  More important, Spalding's and Wathen's alleged actions qualify as intentional torts under Kentucky law and are therefore generally considered outside the scope of their employment.  *See id*. at 51-52 (scope of the employment issue turns primarily on whether behavior was intentional); *see also Booker v. GTE.net LLC*, 214 F. Supp. 2d 746, 749-50 (E.D. Ky. 2002) (applying four factors for scope of employment question, but noting "as a general rule, intentional torts are deemed to fall outside the scope of employment").

       The claim of negligent retention is another matter.  By its very definition, negligent retention is not an intentional act, focusing instead on whether "an employer use[d] reasonable

---

[4] Although the Westfall Act generally requires the Attorney General to certify whether the actions of a federal employee were within the scope of their employment, that power has been delegated to the specific United States Attorneys within their respective jurisdictions.  *See* 28 C.F.R. § 15.4.

care in the selection or retention of its employees." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 732 (Ky. 2009) (citing *Oakley v. Flor–Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998)). A litigant must show "the traditional negligence elements of a negligence claim [can] be established - duty, breach, and consequent injury." *Cooper v. Unthank*, Nos. 2007-CA-002576-MR, 2007-CA-002596-MR, 2009 WL 3320924, at *2 (Ky. Ct. App. Oct. 16, 2009) (citation omitted). As currently pled, the claim is neither targeted at a specific individual nor does it include the intent typically required to take an employee outside the scope of their job. Young's negligent retention claim does not specify any one person at the DOJ acted outside their job parameters or present a sufficient basis to rebut the Government's certification. Therefore, substitution of the United States as the Defendant for this claim is proper. *Cf. Wills v. Postmaster Gen.*, 300 F. App'x 748, 752 (11th Cir. 2008).

The salient question thus becomes what does the Court do with the claims of fraud and malicious prosecution? Where the motion for substitution contests the factual narrative of the complaint, "a district court may hold an evidentiary hearing to resolve material factual disputes related to the scope of employment." *Taboas v. Mlynczak*, 149 F.3d 576, 581 (7th Cir. 1998). Such hearings are commonplace when issues under the Westfall Act arise concerning the scope of employment. *See Jamison v. Wiley*, 14 F.3d 222, 236 (4th Cir. 1994) (collecting cases). Accordingly, the Court will conduct such a hearing at the parties earliest convenience. There, the parties will present evidence regarding Spalding's and Wathen's activities and whether they were in the scope of their employment when they allegedly (1) perpetrated fraud by rejecting Young's offer of payments and (2) maliciously prosecuted Young for threatening individuals at USDA in Owensboro, Kentucky.

Defendants complain such a hearing is unwarranted because Plaintiff has not presented evidence, such as affidavits or a list of witnesses, demonstrating Spalding and Wathen were acting outside the scope to their employment.  However, federal courts within this circuit have typically compared the complaint's plain language to the motion for substitution rather than require plaintiffs to provide extra evidence to avoid the FTCA and the Westfall Act.  *See Kenney v. Harvey*, No. 08-CV-401-JBC, 2009 WL 395775, at *3-4 (E.D. Ky. February 17, 2009) (requiring a evidentiary hearing on scope of employment where there was a direct conflict between the motion for substitution and complaint); *Phillips v. United States*, No. 1:06-CV-275, 2006 WL 1663014, at *1-3 (W.D. Mich. June 15, 2006) (requiring a hearing where plaintiff provided no evidence beyond complaint, but the record did not allow the Court to conclude as a matter of law the employee's action was within the scope of his employment).  Given this precedent, the Court believes holding a evidentiary hearing is the correct route to take.

### 2. Effect of certification

For the negligent retention claim, the substitution of the United States for Spalding and Wathen impacts the proceedings by triggering the requirements of the FTCA.  It mandates that litigants against the federal government exhaust certain administrative remedies, such as presenting an administrative tort claim with the government agency where the tortfeasor is employed.  28 U.S.C. § 2675(a).  That claim must then be taken to a final decision and denied by the administrative agency.  *Harris v. United States*, 422 F.3d 322, at 326-27 (6th Cir. 2005) (only where the agency denies claim or takes no action on it may a litigant proceed under the FTCA). "[E]xhaustion is a necessary prerequisite to the invocation of federal jurisdiction that is intended to reduce the number of suits that ever actually proceed to the federal courts." *Schaffer by*

*Schaffer v. A.O. Smith Corp.*, 36 F.3d 1097, at *3 (6th Cir. 1994) (table) (citing *McNeil v. United States*, 113 S.Ct. 1980, 1983-84 n. 7 (1993)).  There is no indication either Plaintiff or Young pursued this action through the proper administrative channels after the allegation of negligent retention.  Accordingly, this claim is fatally defective and hereby DISMISSED.

## CONCLUSION

IT IS ORDERED:

(1) Defendant's motion for substitution of the United States as a party (DN 67) is GRANTED IN PART.  The United States is substituted as a party for the negligent retention claim.

(2) Defendant's Motion to Dismiss (DN 68) is GRANTED IN PART AND DENIED IN PART.  The claims for fraud and malicious prosecution against Defendants Spalding and Wathen continue pending an evidentiary hearing to be held at a later date.

(3) An evidentiary hearing will be held to determine whether Defendants Spalding and Wathen were working within the scope of their employment when they allegedly committed the state-law torts of fraud and malicious prosecution.  The Court shall schedule the hearing following the telephonic conference on September 29, 2011.